IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT B. EUBANK,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:04-CV-3298-RDP |
| **CITY OF MOUNTAIN BROOK, ALABAMA and RON LAMON,** | } |
| Defendants. | } |

**MEMORANDUM OPINION**

The court has before it Defendants' Motion for Summary Judgment (Doc. # 22) and Plaintiff's Motion for Summary Judgment (Doc. # 24). The motions have been fully briefed and were under submission as of October 14, 2005. (Docs. # 17, 19).

Plaintiff filed this lawsuit on November 30, 2004 against the City of Mountain Brook, Alabama ("the City") and Mountain Brook Police Officer Ron Lamon ("Officer Lamon"). (Doc. # 1).[1] Plaintiff alleges that his June 14, 1999 arrest for driving under the influence was without probable cause and in violation of the Fourth Amendment of the United States Constitution, and he invokes 42 U.S.C. § 1983 as the legal basis for a remedy. (Doc. # 1).[2] Plaintiff also alleges state law

---

[1] By order dated January 25, 2005, the court dismissed Defendant Marty Keely. (Doc. # 15).

[2] Although Plaintiff's complaint avers that "[t]his action arises under 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution," (Doc. # 1, at 2), the only federal claim argued by either party on summary judgment is Plaintiff's Fourth Amendment claim under § 1983, and for good reason. Without question, the Fifth Amendment is not implicated in this case as it applies only to the federal government, not to state and local governments; *Knoetze v. United States Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981); *Dowdell v. Chapman*, 930 F.Supp. 533, 542 (M.D. Ala. 1996). Moreover, the only reference in Plaintiff's complaint to the Fourteenth Amendment occurs in the jurisdictional section as outlined above – Plaintiff's complaint and summary judgment briefs fail to even mention, much less explain, why the

claims of negligence, wantonness, false imprisonment, and false arrest against Officer Lamon. (Doc. # 1).[3]

For the reasons outlined below, the court finds that Defendants' motion for summary judgment is due to be granted and Plaintiff's motion for summary judgment is due to be denied.

**I.    Legal Standards for Evaluating a Summary Judgment Motion**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

---

allegations in this case constitute a substantive violation of either the Equal Protection Clause or the Due Process Clause.  Although Plaintiff is proceeding *pro se* in this matter, and generally "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.1998), the court takes judicial notice of the fact that Plaintiff has been an attorney licensed to practice in the State of Alabama since 1973 and is fully trained and equipped to present legal arguments to the court.

[3] By order dated January 25, 2005, the court dismissed all state law claims against the City of Mountain Brook.  (Doc. # 15).

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

## II.   Relevant Undisputed Facts[4]

This lawsuit arises out of Plaintiff's arrest for driving under the influence by Officer Lamon on June 14, 1999 at approximately 8:00 p.m. (Exhibit 1, Plaintiff's Complaint). Just prior to his arrest, Plaintiff went to the Bruno's supermarket on Shades Creek Drive in Homewood, Alabama to purchase a bottle of wine. (Exhibit 2, Depo. of Robert Eubank, pp. 33-34). Plaintiff had already consumed two or three glasses of wine at approximately 7:00 p.m. (Depo. of Eubank, pp. 30-33). Plaintiff left Bruno's supermarket and proceeded down Shades Creek Drive (Lakeshore Drive) towards the City of Mountain Brook. (Depo. of Eubank, pp. 34-35).

When he approached the intersection of Mountain Brook Parkway and Cahaba Road, Plaintiff noticed there were barricades or orange cones near the entrance to Mountain Brook Parkway. (Depo. of Eubank, pp. 34-35; Depo. of Peeples, p. 13). The barricades were not completely blocking the road, and there was enough room for a car to pass through them. (Depo.

---

[4] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993), although the court has noted when facts are in dispute.

of Eubank, pp. 35-36).[5]   However, the orange cones gave the impression "that you couldn't drive through there or shouldn't." (Depo. of Peeples, p. 13).  Plaintiff noticed that there was water over the road due to flooding in the area, but he decided, "I've been over this road with water on it before, so I think I'll take a chance."  (Depo. of Eubank, pp. 35, 38).[6]

     As Plaintiff proceeded down Mountain Brook Parkway, his Jeep Cherokee became stuck in the flood waters.  (Depo. of Eubank, pp. 36, 38).  Once Plaintiff's vehicle became stalled, he called directory assistance and initially asked for a recommendation for a tow truck service.  (Depo. of Eubank, pp. 31-32).  Plaintiff was instead connected to the Mountain Brook Police Department and informed the dispatcher that he was stalled on Mountain Brook Parkway "in a hundred year rainstorm and a flood" and needed someone to assist him with a tow truck.  (Depo. of Eubank, p. 32).   Dawn Peeples, a witness who was standing near the intersection of Cahaba Road and Mountain Brook Parkway observing the road as it flooded, saw Plaintiff's Jeep enter Mountain Brook Parkway and become stalled. (Depo. of Peeples, pp. 7-9).[7]   Peeples used her cell phone to report the incident to the Mountain Brook Police Department. (Depo. of Peeples, p. 9).  Peeples reported that a Jeep had driven into the water and stalled because the water was rapidly rising. (Depo. of Peeples, pp. 9-10).

---

[5] Plaintiff disputes Officer Lamon's testimony that the barricades were "blocking" the entrance of Mountain Brook Parkway to prevent vehicles from entering the road due to flooding.  (Affidavit of Lamon, at ¶ 4).

[6] Although Plaintiff's summary judgment brief maintains that water was not "rushing" over Mountain Brook Parkway (Doc. # 28, at 4), his deposition testimony clearly indicates that there was a significant amount of water over the road and that, nevertheless, he decided to drive into the water. (Depo. of Eubank, p. 38).

[7] Plaintiff disputes the testimony of Peeples that Plaintiff came "flying" past her and into the flooded creek where his Jeep stalled.  (Depo. of Peeples, pp. 7-9).

The water rose quickly on Plaintiff's Jeep, at least to the bottom of the doors. (Depo. of Eubank pp. 38-39).[8] Plaintiff then grabbed the unopened bottle of wine that he had purchased, exited the vehicle into waist high water, and ran approximately 20 to 40 yards up to the intersection of Mountain Brook Parkway and Cahaba Road where he encountered Officer Lamon. (Depo. of Eubank, pp. 34, 44-45; Depo. of Peeples, pp. 19-20).

Officer Lamon had been dispatched to the scene after being notified that there was a possible drunk driver on Mountain Brook Parkway. (Affidavit of Lamon, at ¶ 3).[9] When he arrived, Officer Lamon noticed that approximately 25 to 30 yards down Mountain Brook Parkway there was an unoccupied Jeep Cherokee which he was told by witnesses had been driven past the orange cones and into the flood water. (Affidavit of Lamon, at ¶ 5). Officer Lamon was advised by witnesses at the scene that the driver, who was identified as Plaintiff, was seated in the vehicle of one the witnesses, Michael Scroggins. (Affidavit of Lamon, at ¶ 5). It is undisputed that Officer Lamon never saw Plaintiff operating or sitting in his own vehicle.

Upon speaking with Plaintiff, Officer Lamon smelled the odor of alcohol on his breath. (Affidavit of Lamon, at ¶ 6).[10] Plaintiff admitted to Officer Lamon that the Jeep Cherokee was his

---

[8] Plaintiff disputes Peeples' testimony that the water was high enough on Plaintiff's Jeep that it almost reached the windows. (Depo. of Peeples, pp. 9-10).

[9] Although Plaintiff has attempted to dispute that Officer Lamon was dispatched because of a possible drunk driver, Plaintiff does not have personal knowledge of the conversation between the dispatcher and Officer Lamon.

[10] Although Plaintiff now attempts to dispute Officer Lamon's characterization of the smell as a "strong odor," Plaintiff admits that he did, in fact, consume two or three glasses of wine around an hour before the incident. (Doc. # 28, at 5; Depo. of Eubank p. 33). At his deposition, Plaintiff admitted that he did not have any basis to dispute that he smelled strongly of alcohol. (Depo. of Eubank, p. 58).

vehicle and that he drove it into the water, and Officer Lamon confirmed that the vehicle was registered to Plaintiff by running a check on the license plate. (Affidavit of Lamon, at ¶ 7). At that time, the vehicle was submerged in flood waters and inoperable. (Depo. of Lamon, pp. 7-8).

When Officer Lamon asked Plaintiff to step out of the vehicle, he almost fell. (Affidavit of Lamon, at ¶ 8).[11] Officer Lamon noticed that Plaintiff's speech was slurred. (Affidavit of Lamon, at ¶ 8). Officer Lamon administered field coordination tests to Plaintiff which included asking him to: (1) walk heel-to-toe along the center stripe of the road; (2) recite the alphabet; (3) touch his index fingers to his nose; and (4) touch his fingers to his thumb. (Affidavit of Lamon, at ¶ 11).[12] Based upon the location of Plaintiff's vehicle, the witness statements and Plaintiff's admission that he was driving the vehicle, Officer Lamon came to the conclusion that Plaintiff had been in actual physical control of the Jeep Cherokee while under the influence of alcohol, and he arrested Plaintiff for

---

[11] Although Plaintiff's brief in opposition to summary judgment disputes that he "almost fell" (Doc. # 28, at 5), the citation from his deposition provided to the court does not dispute Officer Lamon's recollection, and regardless, Plaintiff testified at his deposition that he "wouldn't doubt" that he did almost fall. (Depo. of Eubank, p. 62).

[12] The results of the sobriety test are disputed by Plaintiff. Officer Lamon found that: (1) Plaintiff was unable to balance and unable to place his heel to toe; (2) Plaintiff stopped at the letter "P", but then continued reciting the alphabet after he asked if he had completed it; (3) Plaintiff could not follow the directions relating to placing his index finger on his nose; and (4) Plaintiff could not touch the tips of his fingers to his thumb. (Affidavit of Lamon, at ¶ 11). Peeples, one of the witnesses, also testified that Plaintiff did not appear to have his "coordination together." (Depo. of Peeples, pp. 20-21). Plaintiff claims that Officer Lamon's recollection is false and he avers that his broken foot and/or his exhaustion caused his lack of coordination, if any. (Doc. # 28, at 6). Officer Lamon recalls that Plaintiff did tell him that he had a broken foot, but in Officer Lamon's view, that should not have hampered Plaintiff's ability to perform any of the field coordination tests involving his hands, nor should it have affected his ability to recite the alphabet. (Affidavit of Lamon, at ¶ 13). At no time did Plaintiff indicate he was unable to participate in the field coordination tests due to exhaustion. (Affidavit of Lamon, at ¶ 13).

driving under the influence pursuant to Alabama Code § 32-5A-191(a)(2). (Affidavit of Lamon, at ¶ 12). It is undisputed that the arrest was made without a warrant.

After his arrest, Plaintiff was transported to the Mountain Brook jail where he refused a breathalyzer test. (Affidavit of Lamon, at ¶ 14; Affidavit of Wilson, Ex. A). Before being placed in the jail, Plaintiff was found on the floor and appeared to be asleep. (Affidavit of Lamon, at ¶ 15). Although Mountain Brook paramedics were called to the jail, Plaintiff awoke prior to the paramedics arrival and stated he was not hurt, but felt dizzy. (Affidavit of Lamon, at ¶¶ 16, 17).

**III.    Applicable Substantive Law and Discussion**

As an initial matter, the court notes that Plaintiff has abandoned his only remaining claim against the City - the Fourth Amendment probable cause for arrest claim under § 1983 claim - by failing to respond to Defendants' summary judgment arguments concerning this claim.[13] *See, e.g., Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd,* 44 F.3d 1008 (11th Cir. 1995) ("Summary Judgment is appropriate since plaintiff failed to respond to [defendant's] argument on this issue.") (citations omitted). Accordingly, summary judgment is due to be granted in favor of

---

[13] The only argument Plaintiff makes on summary judgment with regard to the City is the bald assertion that "[t]he complaint alleges failure to train on the part of Mountain Brook." (Doc. # 30, at 4). Even setting aside the fact that this "argument" does not assist Plaintiff's burden "to go beyond the pleadings and . . . show[] that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), Plaintiff's state law claims against the City, including the negligent failure to train claim, have already been dismissed. (Doc. # 15).

the City,[14] and the court will address substantively only the § 1983 and state law claims asserted against Officer Lamon.

### A.      § 1983 Claim Against Officer Lamon

Officer Lamon has asserted that the defense of qualified immunity protects him from liability for Plaintiff's § 1983 claim against him. Qualified immunity offers complete protection for government officials sued in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The analysis utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998).  The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994). "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991).

---

[14] In any event, summary judgment would have been appropriate on Plaintiff's § 1983 claim against the City because Plaintiff has not shown that "the [alleged] constitutional deprivation resulted from a custom, policy, or practice of the municipality." *Wideman v. Shallowford Comm. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). The law is clear that § 1983 claims cannot be pursued against a municipality under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Accordingly, without any evidence of a custom, policy, or practice which caused the alleged constitutional violation, the City cannot be held liable under § 1983.

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.[15] "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Pelzer*, 736 U.S. at 739 (internal quotations omitted).

The qualified immunity analysis begins with a showing that the government official was acting within his discretionary authority; in other words, that "objective circumstances [exist] which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).[16] If the court determines that the official was operating within his discretionary authority, it then must ask whether the plaintiff's allegations, if true, establish the violation of a constitutional or statutory right. *Bogle v.*

---

[15] "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

[16] In determining whether this test is met, the court does not analyze whether the official actually acted lawfully. See *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). Rather, the issue is whether "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [the governmental officer's] discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). As such, "[i]t is perfectly logical for a court to find that someone who was acting illegally was acting within his discretionary authority." *Godby v. Montgomery Co. Bd. of Educ.*, 996 F. Supp. 1390, 1401 (M.D. Ala. 1998).

*McClure,* 332 F.3d 1347, 1355 (11th Cir. 2003) (citing *Pelzer,* 536 U.S. at 736 and *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Finally, "[i]f a constitutional or statutory right would have been violated under the plaintiff's version of the facts, the next step is to ask whether the right was clearly established." *Bogle*, 332 F.3d at 1355.

There is no dispute that Officer Lamon was acting within his discretionary authority when he arrested Plaintiff.  Rather, Plaintiff maintains that Officer Lamon's arrest violated clearly established law because he did not personally observe Plaintiff's misdemeanor offense.  In support of this argument, Plaintiff cites to *U.S. v. Watson*, 423 U.S. 411, 418 (1976), which noted "the ancient common law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or a felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest," and *Davis v. U.S.*, 328 U.S. 582, 613 (1946), which found that "no arrest can be made for a misdemeanor without a warrant unless it be committed in the presence of officers."

Plaintiff's "committed in the presence of the officer" argument lacks merit when considered in the context of the applicable Alabama statutes and the facts of this case. In Alabama, a warrantless arrest is appropriate if: (1) a felony has been committed; (2) any offense (felony or misdemeanor) has been committed in the officer's presence, or (3) **"[t]he arrest is otherwise authorized by statute, such as Ala. Code 1975, §§** 32-5-171**, 32-5A-191,** 15-10-3**."** Ala. R. Crim P. 4.1 (emphasis added). Section 32-5A-191(a)(2), the provision under which Plaintiff was arrested in this case, provides that "[a] person shall not drive or be in actual physical control of any vehicle while . . . [u]nder the influence of alcohol." Ala. Code § 32-5A-191(a)(2).  The statute does not require that an officer witness a person *driving* under the influence in order to make the arrest; rather, the officer need only

find an individual to be in actual physical control of any vehicle while under the influence of alcohol in order for an arrest under § 32-5A-191(a)(2) to be appropriate.[17]

In this case, there can be no doubt that Plaintiff was in actual physical control of a vehicle – he admitted to Officer Lamon that he had driven his Jeep Cherokee just moments earlier on Mountain Brook Parkway. Moreover, even without Plaintiff's admission that he had driven his vehicle, the Alabama Supreme Court has held that an officer can assess "all of the surrounding circumstances" to determine whether a driver was in actual physical control of the vehicle, *Cagle v. City of Gadsden*, 495 So. 2d 1144, 1146 (Ala. 1986), which is clearly indicated in this case. First, Plaintiff called the Mountain Brook Police Department and admitted to the dispatcher that his car was stalled on Mountain Brook Parkway. (Depo. of Eubank, p. 32). Second, Officer Lamon arrived on the scene and noticed that approximately 25 to 30 yards down Mountain Brook Parkway there was an unoccupied Jeep Cherokee. (Affidavit of Lamon, at ¶ 5). Third, officer Lamon was told by witnesses had been driven past the orange cones and into the flood water just moments earlier. (Affidavit of Lamon, at ¶ 5). Finally, Officer Lamon confirmed that the vehicle was registered to Plaintiff by running a check on the license plate. (Affidavit of Lamon, at ¶ 7). Certainly, there is no doubt that Plaintiff was in actual control of his vehicle on the night of his arrest.

Given that Officer Lamon had the authority to arrest Plaintiff if he was in actual physical control of his vehicle while under the influence of alcohol, and given that the evidence is undisputed

---

[17] The court rejects Plaintiff's argument that § 32-5A-191 does not explicitly authorize an *arrest* for a violation of that section. First, Plaintiff's interpretation gives absolutely no meaning whatsoever to Rule 4.1's reference to §32-5A-191 - one of the statutes explicitly authorizing arrest. Moreover, § 32-5A-191(l) clearly contemplates that arrests will be made for violations when it states: "[a] person who has been arrested for violating this section shall not be released from jail under bond or otherwise [until the blood alcohol content reaches a certain level]." Ala. Code § 32-5A-191(l).

that Plaintiff was in actual physical control of his vehicle, the only question left to be answered under the qualified immunity analysis is whether Officer Lamon had probable cause to suspect that Plaintiff was, indeed, under the influence of alcohol. Although a warrantless arrest without probable cause violates the Constitution and provides a basis for a § 1983 claim, the existence of probable cause at the time of arrest constitutes an absolute bar to a § 1983 action for false arrest. *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990). Probable cause exists if an arrest is "objectively reasonable based on the totality of the circumstances." *Wood v. Kessler*, 323 F.3d 872 (11th Cir. 2003)(internal quotations omitted). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wood*, 323 F.3d at 878 (internal quotations omitted). Probable cause requires more than suspicion, but it "does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Wood*, 323 F.3d at 878 (internal quotations omitted). Therefore, to receive the protection of qualified immunity, the officer is not required to have actual probable cause, but only "arguable probable cause." *Wood*, 323 F.3d at 878 (internal quotations omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Wood*, 323 F.3d at 878 (internal quotations omitted).

Plaintiff has not cited to any clearly established law – and the court has not found any such law – that would give a reasonable officer in Officer Lamon's position fair and clear warning that, under the circumstances, he did not have arguable probable cause to believe that Plaintiff was under the influence of alcohol. The Alabama Supreme Court has defined "under the influence of alcohol" as

"having consumed such an amount of alcohol as to affect [an individual's] ability to operate a vehicle in a safe manner." *Ex parte Buckner,* 549 So.2d 451, 454 (Ala. 1989). In this case, Officer Lamon had been dispatched to the scene after being notified that there was a possible drunk driver on Mountain Brook Parkway. (Affidavit of Lamon, at ¶ 3). Upon speaking with Plaintiff, Officer Lamon smelled the odor of alcohol on his breath. (Affidavit of Lamon, at ¶ 6).[18] When Officer Lamon asked Plaintiff to step out of the vehicle, he almost fell. (Affidavit of Lamon, at ¶ 8). Officer Lamon noticed that Plaintiff's speech was slurred, and he observed and was told by Plaintiff and other eyewitnesses that Plaintiff had driven past barricades intended to alert drivers that the road ahead was dangerously flooding. (Affidavit of Lamon, at ¶¶ 5, 7, 8). Even without considering Officer Lamon's opinion that Plaintiff failed four field sobriety tests – which Plaintiff disputes – the evidence is sufficient to show that Officer Lamon had arguable probable cause to conclude that Plaintiff had consumed such an amount of alcohol as to affect his ability to safely operate his vehicle.

Accordingly, Officer Lamon is entitled to the defense of qualified immunity because he had arguable probable cause to arrest Plaintiff for violating Ala. Code § 32-5A-191(a)(2), and summary judgment in his favor is appropriate.[19]

---

[18] Plaintiff has admitted that he had consumed two or three glasses of wine approximately one hour earlier (Depo. of Eubank, pp. 30-33), and he does not dispute that his breath smelled of alcohol. (Depo. of Eubank, p. 58).

[19] The fact that Plaintiff was not actually convicted for his July 14, 1999 arrest has no bearing on the court's analysis given that merits of Plaintiff's case were never adjudicated. The prosecution was dismissed for jurisdictional reasons by the Jefferson County District Attorney's office. (Doc. # 9, at 2).

**B.     State Law Claims Against Officer Lamon**

In this case, Plaintiff has alleged state law claims of negligence, wantonness, false imprisonment, and false arrest against Officer Lamon. As a threshold matter, the court notes that Plaintiff's negligence and wantonness claims are barred under the applicable two-year statute of limitations. Ala. Code § 6-2-38 (l). The law is clear that a cause of action for negligence or wantonness accrues at the time the injury occurs. *Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1339-1340 (Ala. 1997). In this case, Plaintiff's alleged injury occurred when he was arrested on June 14, 1999, over five years before he filed his complaint in this case on November 30, 2004. Accordingly, Officer Lamon is due summary judgment on Plaintiff's claims of negligence and wantonness because they are barred by the statute of limitations.

Moreover, summary judgment in favor of Officer Lamon is appropriate as to all of Plaintiff's state law claims because he is due "peace officer immunity" under Alabama Code § 6-5-338(a).[20] Pursuant to § 6-5-338(a), police officers are shielded from tort liability for discretionary acts performed

---

[20] Alabama Code § 6-5-338(a)(1975) provides:

> (a) Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

within the line and scope of their law enforcement duties, *Norris v. City of Montgomery*, 821 So.2d 149, 153 (Ala. 2001), provided that the officer's conduct was not "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield*, 708 So.2d 144, 153-54 (Ala. 1998). "Discretionary acts" are those acts for which "there is no hard and fast rule as to course of conduct that one must or must not take," and those acts which require "exercise in judgment and choice and [involving] what is just and proper under the circumstances." *Montgomery v. City of Montgomery*, 732 So.2d 305, 311 (Ala. Civ. App. 1999). An official is immune when "that which he does in the performance of his lawful duties requires personal deliberation, decision and judgment." *Norris v. City of Montgomery*, 821 So.2d 149, 153 (Ala. 2001); *see, e.g.*, *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996)(finding that a police officer had engaged in a discretionary act when he detained the wrong person, as his "duties as a law enforcement officer required him to make a split second identification under difficult circumstances").

Plaintiff has not disputed that Officer Lamon was performing a discretionary act when he arrested Plaintiff, nor has he alleged or provided evidence to suggest Officer Lamon's conduct was willful, malicious, or in bad faith. Accordingly, the court finds that Officer Lamon is entitled to immunity from Plaintiff's state law claims pursuant to § 6-5-338(a), and summary judgment is due to be granted in his favor.

**IV.    Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is due to be granted and Plaintiff's motion for summary judgment is due to be denied. The court finds that no genuine issues of material fact remain for trial and that Defendants are entitled to judgment as a matter of law. A separate order will be entered.

**DONE** and **ORDERED** this    31st    day of October, 2005.

                                                         **R. DAVID PROCTOR**
                                                         UNITED STATES DISTRICT JUDGE